UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


IN RE:                              )
                                    )
PRO PAGE PARTNERS, LLC,             )        NO. 2:05-CV-166
                                    )
              DEBTOR                )        (Bankruptcy Court Case No.
                                    )        00-22856m /Adv. Proc. No.
                                    )        03-2042)
                                    )
MARY FOIL RUSSELL, TRUSTEE,         )
                                    )
              APPELLEE              )
v.                                  )
                                    )
CARLETON A. JONES, III,             )
              APPELLANT             )


<u>MEMORANDUM OPINION</u>

    Before this court is the appeal of Carleton A. Jones, III ("Jones")  of the

March 25, 2005, denial of his motion for a judgment on the pleadings[1] and the

grant of trustee Mary Foil Russell's  ("the trustee") motion for summary judgment

by United States Bankruptcy Judge Marcia Phillips Parsons.  This Court has

jurisdiction of this appeal pursuant to 28 U.S.C. § 158(a)(1).  The complex history

of the players in this case and the issues raised by the pleadings was set forth by

---

[1]   Appellant's motion for judgment on the pleadings was properly considered by the bankruptcy
court as a motion for summary judgment.

Judge Parsons in her memorandum opinion on the parties' motions for summary

judgment:

> . . . Pro Page Partners, LLC was a Tennessee limited liability company engaged in the business of marketing and selling paging and cellular communication services to customers in East Tennessee.  The [appellant] Carlton A. Jones, III was a member of Pro Page, holding a 30% membership interest.  In connection with the restructuring and sale of the membership units of Pro Page, the [appellant] entered into a Redemption and Indemnification Agreement dated December 30, 1998 (the 'Indemnification Agreement').  The [appellant] and two individuals named Mark Halvorsen and Joe S. Potter are collectively referred to in the Indemnification Agreement as 'Guarantors' while Joseph K. Reid and Lawrence H. Reid are jointly referred to as 'Sellers.'  Under the terms of the Indemnification Agreement, Pro Page and the Guarantors, jointly and severally, agreed to indemnify and hold the Sellers harmless against all claims asserted against Sellers 'as a result of the operation of [Pro Page] and/or [Pro Page's] business, including, without limitation, any liability asserted against Sellers arising from personal guaranties to Kenesaw Leasing.'

> On October 23, 2000, almost two years after the execution of the Indemnification Agreement, Pro Page filed for bankruptcy relief under Chapter 11, but subsequently converted the case to chapter 7 on September 4, 2001.  Mary Foil Russell was appointed chapter 7 trustee.  On April 16, 2003, in the adversary proceeding *Mary Foil Russell, Trustee v. Joseph K. Reid*, No. 02-2027, the trustee obtained a judgment against Joseph K. Reid ('Reid') in the amount of $319,699.05.  Thereafter, by an assignment agreement dated June 30, 2003, Reid assigned to the trustee his rights in the

2

Indemnification Agreement. As a result of the assignment, the trustee commenced the instant adversary proceeding against the [appellant] on August 13, 2003.

It is alleged in the complaint that the trustee as assignee of Reid 'is entitled to enforce the Indemnification Agreement against the appellant in the place and stead of Mr. Reid,' that the judgment against Reid 'arises from the business and operations of Pro Page,' and that the appellant 'is legally bound by virtue of the Indemnification Agreement to indemnify Joseph K. Reid in full for the judgment or to pay the amount of the Judgment together with interest earned thereon to the plaintiff.' In response to the complaint, the appellant admits in his answer the trustee obtained a judgment against Reid, but denies that 'the Judgment arises from the business and operations of Pro Page' or that 'the Judgment debt is within the scope of the Redemption and Indemnification Agreement.'

In her motion for summary judgment filed December 15, 2004, the trustee asserts that there is no genuine issue of material fact and she is entitled to judgment as a matter of law, not only to recover from the defendant the amount of the judgment previously obtained by her against Reid but also reasonable attorney's fees and expenses incurred in enforcing the Indemnification Agreement. The defendant opposes the trustee's summary judgment motion for the reasons set forth in his answer. In addition, as set forth in his motion for judgment on the pleadings filed January 28, 2005, the defendant asserts that he had neither notice of the trustee's lawsuit against Reid nor an opportunity to defend against the action; that in the absence of such notice the trustee must allege in the complaint and prove that the judgment against Reid is unavoidable; and because the complaint fails to make this required allegation, it is insufficient on its face, entitling the

3

defendant to judgment on the pleadings. . .

At issue in the adversary proceeding, therefore, was: 1) whether the trustee as the assignee of Mr. Reid ("Reid") was entitled to enforce the Indemnification Agreement against Jones; 2) whether the judgment against Reid arose from the business and operation of Pro Page; and, 3) whether Jones was legally bound by the Indemnification Agreement to indemnify Reid. As set forth in the Bankruptcy Judge's memorandum opinion, Jones contends that the judgment against Reid did not arise from the business and operations of Pro Page and argues that the judgment debt was not within the scope of the Indemnification Agreement. Jones also argues that he never received notice of the trustee's lawsuit against Reid and never had the chance to defend himself. And, considering that he did not receive notice, Jones contends that the trustee had to allege in her complaint that the judgment against Reid was unavoidable. Because she did not, Jones alleges that the trustee's complaint failed to state a claim for relief.

The bankruptcy court ruled in its March 25, 2005, order that the judgment against Reid arose from the business and operations of Pro Page, that the trustee's judgment against Reid fell within the scope of the Indemnification Agreement, that Jones was not entitled to notice of the trustee's lawsuit, and that the trustee did not have to allege in her complaint that the judgment against Reid was

4

unavoidable. The bankruptcy court then granted the trustee's motion for summary judgment and denied Jones' motion.

In Jones' appeal of the bankruptcy court's decision, he identifies the same three issues to be decided as were at issue in the adversary proceeding. When reviewing the decision of the bankruptcy court on these issues, this court cannot set aside findings of fact unless they are clearly erroneous. *Fed. R. Bankr. P. Rule 8013*. Conclusions of law are reviewed *de novo*. *In re Morehead*, 249 F.3d 445, 447 (6th Cir. 2001).

Jones first argues that the trustee's judgment against Reid in the adversary proceeding did not arise as a result of the operation and/or business of Pro Page. Instead, he claims Reid's liability arose from a preferential transfer action the trustee brought against Message Express. In the opinion of the bankruptcy court, "unquestionably, Pro Page's agreement with Message Express arose 'as a result of the operation of [Pro Page] and/or [Pro Page's] business' ". Pro Page, the bankruptcy court explained, contracted with Message Express to buy paging units, computers, and equipment. And, "because Reid's liability under the judgment arose entirely from his guaranty of Pro Page's business obligation to Message Express and Pro Page's failure to perform that obligation, it falls within the scope of the Indemnification Agreement, notwithstanding that the judgment is

5

held by the trustee rather than Message Express." (*See* Memorandum, Bankruptcy Court Docket No. 45, pp. 7-8) (hereinafter "Memorandum, p. ___").

The first step in analyzing whether the operation and/or business of Pro Page was involved in the agreement with Message Express is to look at the agreement itself. The language of the indemnification clause in the Indemnification Agreement is as follows:

> [Pro Page] and [Jones], jointly and severally, agree to defend and indemnify and hold [Reid] harmless from and against any and all liability, claims, demands, damages, obligations or debts asserted against [Reid] as a result of the operation of [Pro Page] and/or [Pro Page's] business, including, without limitation, any liability asserted against [Reid] arising from personal guaranties to Kenesaw Leasing.

Under Tennessee law, contracts that are clear and unambiguous should have their terms "taken and understood in their plain, ordinary and popular sense." *Munford Union Bank v. American Ambassador Casualty. Co.*, 15 S.W.3d 448, 451 (1999). A plain reading of the indemnification clause of the Indemnification Agreement shows that Jones had to indemnify the trustee (who stands in the place of Reid) for any debt Reid incurred as a result of the operation and/or business of Pro Page. As set forth above, the bankruptcy court's finding of fact that Pro Page's agreement with Message Express arose as a result of the operation of Pro Page and/or Pro Page's business cannot be set aside unless this court finds it clearly erroneous.

6

Because the debt in question arose from the $310,000 sale of certain assets of Pro Page to Message Express and Reid personally guaranteed Pro Page's indebtedness to Message Express, the bankruptcy court's finding is not clearly erroneous and will not be set aside.

Next, Jones claims that the trustee's judgment against Reid was not within the scope of the Indemnification Agreement because it references the guaranty to Kenesaw Leasing and no other obligation. Jones explains that "if Reid believed the Indemnification Agreement encompassed all obligations, whether known or unknown, the inclusion of Kenesaw Leasing would have been unnecessary." The bankruptcy court found this argument "without merit," explaining that "construction of the Indemnification Agreement is governed by the language of the agreement itself regardless of the defendant's knowledge of the Message Express guaranty or his understanding of the parties' intention in executing the agreement." It would be "contrary to the provision's clear and unequivocal language" to find that the trustee's judgment against Reid was not within the scope of the Indemnification Agreement. (Memorandum, pp. 8-9).

Again, the bankruptcy court is correct. As referenced above, under Tennessee law, clear and unambiguous contracts should have their terms "taken and understood in their plain, ordinary and popular sense." *Munford Union Bank*,

15 S.W.3d at 451. Even Jones claims the contract in question is clear and unequivocal. The contract specifically governs "all liability, claims, demands, damages, obligations or debts," and the trustee's judgment against Reid is certainly included among those.

And, regarding the Kenesaw Leasing guaranty language, as the bankruptcy court noted, it is not material "[t]hat the indemnity clause specifically listed the Kenesaw Leasing guaranty as one of the obligations covered by the provision since the reference was clearly preceded by the phrase 'including, without limitation' ". (Memorandum, p. 9). For support, the bankruptcy court relied upon *Cintech Indus. Coatings, Inc. v. Bennett Indus., Inc.*, 85 F.3d 1198, 1202-03 (6th Cir. 1996), which stated that the phrase "including, but not limited to" disallowed a construction that limited the scope of application. That the contract singles out the Kenesaw Leasing guarantee does not necessitate a finding that that was the only guarantee covered because of the "including, without limitation" language that preceded the naming of the guarantee.

In sum, the trustee's judgment against Reid was within the scope of the Indemnification Agreement because the plain language of the contract supports that interpretation. In addition, Sixth Circuit construction of limiting phrases precludes any inferences from being drawn concerning the naming in the

8

Indemnification Agreement of Kenesaw Leasing.

Finally, Jones contends that he is not bound by the trustee's judgment against Reid because he was not given adequate notice of her action against Reid. The trustee should have, therefore, according to Jones, alleged in the complaint and proven that the judgment she obtained against Reid could not have been avoided. The bankruptcy court disagreed with Jones as to the allege and prove requirement, relying upon the holding of a Sixth Circuit case construing Tennessee state law. The bankruptcy court explained that *Ford Motor Co. v. W.F. Holt & Sons, Inc.*, 453 F.2d 116 (6th Cir. 1972), stood for the principle that "[t]he requirement of alleging and proving that the judgment may not be avoided is applicable to contracts which only indemnify against liability, as opposed to contracts which indemnify against claims, losses, or damages." And, since the Pro Page Indemnification Agreement indemnified against not only liability but also, "claims, demands, damages, obligations or debts," the bankruptcy court found the requirement did not apply. The bankruptcy court elected not to decide the issue of whether reasonable notice was in fact given, finding that Jones was "bound by the judgment against Reid even if notice was not given." (Memorandum, pp. 11-12).

This final issue raised by Jones consists of two parts. First, was the trustee

(the indemnitee) obligated to give  Jones (the indemnitor) notice of the adversary

proceeding against  Reid and an opportunity to defend himself in order for the

judgment to be conclusive against him?  And, if so, was the trustee obligated to

allege in the complaint and prove that the judgment obtained against  Reid was

unavoidable?

Whether notice of the adversary proceeding as an indemnification action was

required is a question of Tennessee state law, and, as such, this court must look to

the rulings of the Tennessee state courts.  *United Services Automobile Assn. v.*

*Barger,* 910 F.2d 321, 325 (6th Cir. 1990).    As to the first part of this issue,  Jones

claims that he was entitled to notice of the trustee's suit against Reid and an

opportunity to participate in and defend the suit.   To support his contention, Mr.

Jones cites *Jones v. Bozeman*, 321 S.W.2d 832 (Tenn. Ct. App. 1958) and

*Clinchfield R.R. Co. v. U.S. Fid. & Guar. Co.*, 160 F.Supp. 337 (E.D. Tenn. 1958),

*aff'd* 263 F. 2d 932 (6th Cir. 1959).   The *Bozeman* court found a judgment against

a sheriff in a first suit was not conclusive against his deputies in a second suit

concerning indemnity bonds when the deputies were never given notice that the

judgment in the first suit could be conclusive against them.  *Bozeman,* 321 S.W.2d

at 839.[2]  In *Clinchfield*, the court adopted the conclusions of the Third Circuit,

---

[2]   The *Bozeman* court, in turn, relied upon the 1840 decision of the Tennessee Supreme Court in
the case of *Seat v. Cannon*, 20 Tenn. 471, 1 Hum. 471 (1840) which held:

applying Pennsylvania law, in *Crawford v. Pope & Talbot, Inc.*, 206 F.2d 784, 795 (3ʳᵈ Cir. 1953), and held that if an indemnitor was under a duty to participate in an action and was not "given reasonable notice of the action and requested to defend," then the findings made in the action were not binding on either the indemnitee or the indemnitor. *Clinchfield,* 160 F.Supp at 341.

Referring to *Bozeman* and *Clinchfield* as "older cases", the bankruptcy court distinguished the holding of each of those cases from the present case with the following statement: "Both of these types of indemnity agreements [indemnity under a surety bond and an indemnity obligation under an insurance policy] *in all likelihood* had a specific notice and opportunity to defend provision in them, unlike the indemnity provision in the instant case." (Memorandum, p. 13) (emphasis added). No facts are set forth in either opinion to support this conclusion of the bankruptcy court nor does anything in the written opinions suggest that such a distinction was the basis for the Court's holding in either case.

According to the bankruptcy court, notice to Jones was not required because "[t]he Indemnification Agreement itself did not impose a notice requirement and

_____

It is a well settled principle of law that no one who is not a party, or in the relation of a representative of a party, is estopped from enquiring into the merits of a judgment by which his rights are sought to be affected, for the plain, common-sense reason that he shall not be judged without being heard.

11

this court knows of no statutory requirement for notice in these circumstances."
(Memorandum, pp. 11-12) For additional support, the bankruptcy court cited two
cases–one from the Fourth Circuit and one from the northern district of Iowa– both
of which held that notice was not generally a requirement in indemnification
actions. *Premier Corp. v. Economic Research Analysis*, 578 F.2d 551, 554 (4th Cir.
1978); *Smithson v. Wolfe*, No. C94-1015, 1999 WL 33656866, *4 (N.D. Iowa
1999). The bankruptcy court also cited one district court case applying Tennessee
law, *Sears, Roebuck and Co. v. Strey*, 512 F. Supp. 540, 542 (E.D. Tenn. 1981). In
*Strey*, a judgment had been entered against Sears, Roebuck and Company (Sears)
in the Circuit Court of Roane County as a result of work done by Strey. Strey was
not a party to the Roane County proceeding. Sears then sought indemnity from
Strey pursuant to an indemnity agreement. Strey argued that Sears had waived any
claim to indemnity since Strey was not notified of the state court action. Judge
Robert L. Taylor held that lack of notice to an indemnitor of a pending action does
not prevent an action by the indemnitee. The holdings of *Premier Corp., Smithson*
and the bankruptcy court all correctly state the law but they do not address the
ultimate issue here, that is, whether notice to the indemnitor is required <u>in order</u>
<u>for the indemnitor to be conclusively bound by a judgment against the indemnitee</u>.

Under Tennessee law, it would appear that reasonable notice to the

indemnitor of an indemnity action is required before the action can be binding on the parties. Lack of notice does not bar a claim for indemnity, "but simply changes the burden of proof and imposes on the indemnitee the necessity of again litigating and establishing all of the actionable facts." 41 *Am. Jur*. 2d <u>Indemnity</u> § 53 (2d Ed. 2004). "Under such circumstances the indemnitor is free to contest the validity of the judgment and the liability of the indemnitee." *Ford Motor Co. v. W.F. Holt & Sons, Inc.*, 335 F. Supp. 775 (M.D. Tenn. 1971), *rev'd on other grounds*, 453 F. 2d 116 (6th Cir. 1971). The first question then in this case is whether Jones was given reasonable notice of the pending action of the trustee against Reid, such that the judgment is conclusive against him without further proof by the trustee. Unfortunately, the bankruptcy court did not make findings of fact on this issue because the court erroneously determined that, regardless of notice, Jones was bound by the prior judgment.

The question of whether reasonable notice[3] was given to Jones is a disputed question of material fact. Under *Fed. R. Civ P*. 56, as incorporated by *Fed. R. Bankr*. P. 7056, summary judgment for a party should only be entered if the evidence presented to the court "show[s] there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

---

[3] Reasonable notice appears to require more than mere notice of the pendency of the suit but also an opportunity to defend. *Bozeman,* 321 S.W. 2d at 838.

law." The notice issue is most certainly material, as it goes to the heart of whether the judgment obtained by the trustee against Reid can be collected from Jones without further proof by the trustee. This Court, therefore, finds that the bankruptcy court erred in granting the trustee's motion for summary judgment because material facts remain at issue.

The essence of Jones' motion, whether decided as a motion for a judgment on the pleadings or a motion for summary judgment, is premised upon Jones' argument that, because he did not receive adequate notice the trustee's action against Reid, the trustee must allege and prove that the judgment against Reid was unavoidable. Because the underlying premise of Jones' position, at least in part, is a matter of disputed material fact, i.e. whether he had adequate notice and opportunity to participate in the Reid adversary proceeding, his motion was properly denied. The disputed facts clearly preclude the entry of summary judgment and the motion for judgment on the pleadings has utility only when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided. *See Grindstaff v. Green*, 133 F. 3d 416 (6th Cir. 1998); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed. 2004).

Given this Court's decision that a genuine issue of material fact exists

which precludes the grant of either the motion of the trustee or the motion of Jones, it is not necessary for this Court to now decide the second part of the final issue raised by Jones, that is, the applicability of the "allege and prove" requirement.  In view of the bankruptcy court's erroneous conclusion that Jones "is bound by the judgment against Reid even if notice was not given", the bankruptcy court may well need to revisit the issue, depending upon its factual determination as to the adequacy of the notice given.[4]

Accordingly, this court reverses the bankruptcy court's grant of summary judgment to the trustee but affirms the bankruptcy court's denial of Jones' motion for summary judgment.  Jones' appeal, therefore,  is sustained in part, and this action is remanded to the bankruptcy court for a determination concerning whether reasonable notice of the adversary proceeding was afforded to Jones and such further proceedings as appropriate, if any, based upon the findings of the bankruptcy court.

An appropriate order will enter.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE

---

[4]   Likewise, the bankruptcy court may also consider whether or not it is appropriate to exercise its discretion pursuant to Rule 15, *Fed. R. Civ. P.*, to allow the trustee to amend her complaint.